The next case on the calendar is Wilson v United States. May it please the court, Alyssa Hart Mahan for the United States. I believe I've reserved two minutes of my time for rebuttal. That's fine. Thank you. Your Honors, Section 6048 of the Internal Revenue Code provides for three different reporting requirements for U.S. persons who have interactions or relationships with foreign trusts. The reporting requirement at issue in this case is in Section 6048C, which requires any United States person who receives a distribution from a foreign trust to file a return reporting the amount of that distribution and the name of the trust. There are also reporting requirements related to transfers to or creations of foreign trusts. That's 6048A. And 6048B requires a U.S. owner of a foreign trust to ensure that the foreign trust files an annual return reporting on the trust's activities. In this case, the IRS liquidated his foreign trust. He was the sole owner and sole beneficiary of this foreign trust, and he distributed the trust's $9.2 million in assets to himself. He did not file any return reporting this distribution, nor did he ensure that the trust filed the required annual return reporting on the trust's activities. The IRS assessed and it's Section 6677 provides for penalties that apply when a taxpayer violates the reporting requirements in Section 6048. So because of a taxpayer's failure to report his receipt of the $9.2 million distribution, the IRS assessed a 35% penalty against him. And under Section 6677, the amount of the penalty is 35% of the amount of the distribution, or here $3.2 million. Taxpayer filed a refund suit. And the district court in this case held as a matter of law that the 35% penalty could not apply to taxpayer because he also violated the reporting requirement that applied to owners of foreign trusts. The district court's reading of the statute was erroneous and conflicts with the plain text of the statute. The statutory scheme creates three separate reporting requirements and Section 6677 provides for three separate penalties that correspond to each of those violations. The district court's holding that anytime an owner violates Section 6048B's reporting requirement, only the 5% penalty that applies to owners can apply and no 35% penalty can apply, essentially reads a penalty coordination provision into Section 6677. And the text of the statute does not include such a provision. The text of the statute provides for separate penalties for each violation of Section 6048. So is it fair to say that the district court is perfect? The 6677 refers to any failure to file a return. Go ahead, Judge Carney. I just, you know, the fact that the district court interpreted the statute as Mr. Wilson does here suggests to me that maybe this is, the statute is more ambiguous than the government's position allows and that perhaps we should strictly construe it in favor of the taxpayer as he argues in light of the district court opinion. Why would that be erroneous as an approach? Because the plain text of the statute is clear, Your Honor. Section 6677 provides that a penalty applies to any failure to file a return required by Section 6048 and the use of the term any suggests there could be multiple violations. And then the statute's definition of the gross reportable amount. So the way the penalty is calculated is the percentage of the gross reportable amount. And Section 6677C provides for three different gross reportable amounts depending on the nature of the violation. So for 6040, for a violation of 6048A, the gross reportable amount is the amount of the transfer to the trust. 6048B is the, I'm sorry. Did Mr. Wilson comply with the reporting obligations in any, in prior years? I know there were some that he did not, but is there any year in which he did cause the trust to file an annual report? Your Honor, that evidence is not in the record. The record does establish that he failed to file any returns. He did, or he failed to timely file returns for 2005, 2006, and 2007. The record also makes clear that he failed to report the income that he received from the trust on his individual returns, which the estate concedes he should have done. And it was only after the IRS began an examination of his 2007 taxes that he filed amended returns that untimely reported the income and that untimely included the annual return and the reported distribution. Well, to some degree, the information overlaps though, doesn't it? In the sense that when the owner is filing, he or she is filing and listing beneficiaries. So they're, I mean, presuming, I suppose there could be more than one beneficiary besides the owner, if the owner is also a beneficiary. But in this instance, it was just the owner. And so the owner, Ann, what you're saying is that the owner should be providing the information relative to the beneficiary and the beneficiary should be providing the same information relative to themselves. Is that it? So, your honor, the IRS forms actually acknowledge in a way this overlap. So the annual return that the trust has to file must report all distributions. And then part two of the form 3520, which applies to U.S. owners of foreign trusts, provides that as long as the part two of form 3520, the owner need not report that distribution again. Yeah. Had Mr. Wilson filed as an owner, the forms give him an opportunity to not have to file separately as a beneficiary. He just checks the box, correct? Correct. And we agree, your honor, if he had accurately completed part two of form 3520, and if the trust had filed the required annual return, or if the trust had failed to do so and the owner and the taxpayer as owner had attached a substitute form 3520A reporting the distributions, that he would have satisfied the 6048C reporting requirement. But the fact of the matter is- I'm sorry. No, go ahead and finish your thought. I apologize. Go ahead. I was just going to say he didn't file any of those forms here. Can I ask you, is there any situation that you can think of where the owner is the beneficiary, or well, the owner is a beneficiary, not the beneficiary, but a beneficiary, where an owner won't incur both the 5% and the 35% pursuant to your reading of the statute? Well, if the trust files the form 3520A, if the owner ensures that the trust files form 3520A, then the owner is not subject to the 5% penalty that corresponds to a violation of 6048B. Just say the trust were managed by a fiduciary or something, and they went ahead and filed. You're saying then the owner might have a problem as a beneficiary, but not as the owner. Correct. The 6048B imposes a duty on the owner to ensure that the trust files the annual return. Because that did not happen here, the 5% penalty applies. Of course, because he liquidated the trust, the 5% penalty is zero in this case. I'll reserve the remainder of my time. Thank you. Mr. Adler? There you are. Good morning. Do you hear me? Good morning. Yes. Good morning. You may have pleased the court. This is an unusual experience in my upstairs bedroom, but here we are. This is a case of first impression, an important case dealing with the penalty for the late filing of a single tax return by a person who is both the owner and the beneficiary of the trust where the form requesting this information was identical. Government counsel just acknowledged what we've been saying for several years here. Had the owner complied with the requirements and the instructions, that would have provided exactly the same information that the beneficiary was called upon to provide, specifically the date of the transfers, the fair market value, and the description of the property. That information is called for by line 5 of form 3520A, as well as line 17B. So clearly, if the owner has provided this information, there is no reason, and the government acknowledges this in its brief, for the beneficiary to provide the same information. As the government said in its reply brief, the instructions set out an alternate way for the owner to provide. Mr. Adler, if Mr. Wilson had been the beneficiary of several trusts, one of which he owned, but several others of which he did not, he would have had to file, wouldn't he? As a beneficiary? Yes. And had he not filed with regard to this trust, included that information on that other return, would there have been a problem for him? Certainly. So it's possible that someone as a beneficiary, who also happens to own the trust, does have individual responsibilities, both as beneficiary and as owner. Is that the case? No, to make sure I understand your question, if he was the beneficiary of a separate trust, but not also the owner, then he had the filing obligation. I asked you, my question was, if he was the beneficiary of several trusts, one of which he owned, would he have to file as a beneficiary of those trusts and have included the information about himself as a beneficiary of the trust he owned? And the answer to that is yes, is it not? No, the answer is no. I believe he would probably deal with this separately for the trust that he is the owner. That's because the IRS allows him to do that when he files, but your client didn't file, did he? No, correct. Absolutely. So did he violate one duty or two? He violated one. What if he had just filed as a beneficiary? What if he had just filed the form as a beneficiary? Correct. Well, would he have violated his duty as an owner not to have filed the owner form? I think so. So they are separable then? You agree they're separable? They're separable only if the beneficiary and the owner are not the same person. If they're the same person, it's not. I'm not so certain that that's what your earlier answers imply, but I'm not going to harass you about that. Go ahead, Mr. Adler. All right. Let me ask you a question, if I may. Could we decide this case in your favor without looking at Form 3520 at all? Can we just look at the statutes, interpret the statutes, or do you rely on some of the owner language in the Form 3520 instructions as they were in 2007? Yeah. Yes, Judge Carney, you could decide it. It's just saying that there's an ambiguity as to whether looking at the statute, as to whether the further statute, the reporting obligation fell on Wilson as the owner or the beneficiary and going back to Exxon Mobil, the Scorch case and Supreme Court cases and so forth. That is to be decided in favor of the required Mr. Wilson to ensure the filing of the form rather than himself to file. I think it required both. It required him to ensure the filing by the trust of the 3520A and also obligated him to file the 3520. Wouldn't you agree that ensure the filing means something different than to file? If I say, Mr. Abner, you must file this form, doesn't that mean something different than you must ensure that the form is filed? One sense, yes. Another sense, bearing down on the language in the statute before it was amended in 6048B, it's obvious from our papers that the IRS interpreted that statute before the amendment as authorizing it to require the owner to file the 3520. I'm talking about how you and I read that language. Isn't there a difference when Congress says, taxpayer, you must ensure the filing of a form with regard to X, Y, and Z versus you must file? Doesn't that allow for interpretation? Does that allow for different methods of compliance? I think so. Here's the reason. I believe that in the ensure obligation that read into that, how does the owner ensure that? Well, on part three and part two of form 3520, the owner is to check the box. I believe it's whether the trust in fact filed the 3520. The compliance obligation not only fell into the 3520A under the ensure, but I believe it also ran into the 3520 itself. The ensuring was done in two ways. The trust files the 3520A and also the owner files the 3520 checking that box. Mr. Adler, I'm focusing on just the statutory language and wondering if you'd agree with me that a directive by statute that you must file is different from you must ensure. Yes, yes. Looking at the statute. Thank you. The statute provides with regard to the distribution. Any United States person who receives a distribution must file a return. I guess I'm having difficulty, and maybe you can help me out, understanding why it would make sense to subject a person who is a beneficiary and it fails to report to a 35% penalty, but then to permit an owner who's also a beneficiary to be subject to a lesser penalty and to create a situation, as your beneficiary could completely liquidate the trust and avoid any penalty whatsoever. Because your honor, it's the way that the IRS has interpreted this, and I believe the way the statute works, and a government counsel said that they're overlapping reporting obligations, so that the distributions, if you're the owner and also the beneficiary, can, per the instructions, per government's briefs, per her statements, they can be reported by the owner as the owner. And, you know, it's the same information. And the statutory framework is, for whatever reason, Congress defined this, but it's a different percentage and also a different formula. So the owner obligation, I think, as we said in our briefs, I think that that was designed to be even more punitive in many instances than the 35%. Because the end of the year account balance, that could be astronomical. It could be $10 million, $20 million, 5% of that, it could be $500,000 and so forth. And there could be a $10,000 distribution, which the owner didn't timely report. So the penalty could be 50 times the distribution. So it's not simply, your honor, you know, a measure of 5% versus 35%. Right, but you do create a situation in which an owner who fully liquidates, so brings the trust down to zero, would have the 5% penalty would be zero. Am I not right about that? That is correct. And I think in the statute, what I don't think Congress envisioned the situation. I think that the history, legislative history is that these trust what they're worried about. This is not our case. We're taxpayers placing these assets overseas, hiding them from the IRS and so forth. So the idea that taxpayers would actually totally liquidate, bring the funds back. I don't think that Congress focused on that, because there's no savings clause. What happens if there's a zero balance a year end? Then what? The statute is still clear is 5% of the year end account balance. It didn't say, but no less than 5% of the distributions. The statute is a statute and we're here to read it. And obviously the courts are there to enforce it. Thank you, Mr. Adler. Okay. Thank you, Mr. Adler. Thank you. Okay. Thank you. We'll hear rebuttal. Thank you, Your Honor. I would note that this court need not go beyond the text of the statute. The statute imposes separate reporting obligations on US owners of foreign trust, and on any US person who receives a distribution from a foreign trust. And here, taxpayer was both an owner and a recipient of a distribution and accordingly, two separate penalties applied under Section 6677. And while this court need not go beyond the plain text of the statute, the history and purpose of these statutory provisions makes clear that two separate penalties apply. As we discuss in our brief, prior to 1996, the penalties for violating the foreign trust reporting requirements were fairly minimal. They were capped at $1,000. And there was a 5% penalty that applied. In 1996, due to concerns that taxpayers were abusing foreign entities and using bank secrecy jurisdictions to evade their tax obligations, Congress added a reporting requirement for US recipients, for individuals who receive distributions from foreign trusts. And Congress chose to use the language, any US person who receives a distribution. So not limiting it to non-owners, but including all US persons who receive distributions. And Congress significantly increased the penalties to 35% of the gross reportable amount, did away with the $1,000 cap. And this all suggests that the result here and the district court's interpretation of the statute here was simply incorrect. Separate penalties applied to each violation. And to allow any owner who liquidates a foreign trust to avoid all penalties for their reporting violations is contrary to the statute and not what Congress intended. We ask the court to reverse the district court's decision and remand the case for additional proceedings on taxpayers, or on the estate's claim that reasonable cause excused is failure to file the required forms. Thank you. Thank you both. Well argued and we thank you. And that is the last argued case on the calendar. So I will ask the clerk to adjourn court. Four cents adjourned.